M. L. ROOT, Appellee, v. TOWN OF CINCINNATI *et al.*, Appellants; J. J. KERR, Appellee, v. SAME, Appellants.

Boundaries: TOWN PLATS: CONFLICT BETWEEN SURVEY AND PLAT. When there is a conflict between a survey, as actually made, and the plat thereof, the actual survey controls when it can be ascertained. Accordingly, where an addition to a town was surveyed by M., but the plat was made by the proprietor, who soon thereafter sold lots therein by number, pointing out to the purchasers the boundaries thereof, and the latter built their fences, and made other improvements according to such boundaries, and occupied and controlled the lots for many years, *held*, that it must be presumed that such boundaries were the ones established by the survey of M.; and that the town, upon subsequently ascertaining that they did not correspond with the plat, had no right to interfere with the lots in the actual possession of the owners, in order to make the alleys correspond with the plat.

*Appeal from Appanoose District Court.*—HON. WILLIAM I. BABB, Judge.

TUESDAY, JANUARY 24, 1893.

ACTION in equity to restrain the defendants, the incorporated town of Cincinnati and its council and street commissioner, from removing or destroying certain buildings, fences and trees, and for general equitable relief. The cases were tried and submitted together in the district court. From a decree in favor of plaintiffs, the defendants appeal.—*Affirmed.*

*Geo. D. Porter*, for appellants.

*T. M. Fee*, for appellees.

ROBINSON, C. J.—In June, 1875, J. C. McDonald caused to be surveyed and platted into town lots a tract of land which he owned, adjoining the town of Cincinnati.    The name given to the tract so platted was "J. C. McDonald's First Addition to the town of Cincinnati."    Block 2 of that addition contains lots numbered from 1 to 8, inclusive, commencing on the west. Each lot is fifty feet in width, and extends from Pleasant street, on the south, one hundred and thirty-two feet northward, to an alley.    Lots 4 and 5 are separated by an alley sixteen feet in width, which extends from Pleasant street, northward through the addition; and lots 6 and 7 are separated by an alley of the same width, which extends from Pleasant street to the alley on the north side of the block.    In August, 1875, McDonald sold lots 3 and 4 to Harriet B. David.    Her husband fenced them for her in the fall of that year, planted trees and built a coal house, pig pen and barn on the east side of lot 4, next to the alley.    It is not shown when lot 5 was sold by McDonald, but it was fenced by David in the year 1876.    In the spring of 1881 the plaintiff bought, and has since occupied, the three lots as a homestead.    Lot 6, in block 2, was sold by McDonald in August, 1878, and in the year 1881 it was purchased by the plaintiff J. J. Kerr.    In the year 1883 he purchased of McDonald lots 7 and 8, and has occupied them as his homestead since that time.    His dwelling is on lot 6, and on the east side of that lot, next to the alley, there are a coal and lumber house, smokehouse, pig pen, fruit and ornamental trees and shrubbery.

The addition is within the limits of the incorporated town of Cincinnati.    When first platted it contained four blocks, three of which were vacated in the year 1879.    In the year 1886 they were re-established. In April, 1887, the council ordered a re-survey of the town plat, which was made.    According to that survey

the alley separating lot 4 from lot 5, and the one separating lot 6 from lot 7, are about six feet further west than they were supposed to be, according to the original survey. The council has ordered the streets and alleys to be opened according to the last survey, and the object which the plaintiffs really desire to accomplish is to prevent any interference with their lots, and the buildings, fences, trees and shrubbery thereon, as they now exist. If the order of the council is carried into effect, it will cause serious inconvenience and loss to the plaintiffs.

The first survey was made by one Morrison, but the plat was made by McDonald. The second survey was made according to that plat, and it may be conceded that it shows that the plaintiffs are occupying parts of the alleys in question. But that is not decisive of their rights; for it is a well established rule that where there is a conflict between a survey, as actually made, and the plat thereof, the actual survey controls, when it can be ascertained. This rule is frequently applied to government surveys of public lands. "Metes and bounds in description of premises control distances and quantities, when there is any inconsistency between them." *Morrow v. Whitney*, 95 U. S. 551. "Ordinarily, surveys are so loosely made, and so liable to be inaccurate, especially when made in rough or uneven land or forests, that the courses and distances given in the instrument are regarded as more or less uncertain, and always give place, in questions of doubt or discrepancy, to known monuments and boundaries referred to as identifying the land. * * * Such monuments may be either natural or artificial objects, such as rivers, streams, springs, stakes, marked trees, fences or buildings." *Higueras v. United States*, 5 Wall. 827. "The true corners [of land derived from the general government] are where the United States surveyors in fact establish them, whether such location

is right or wrong, as shown by subsequent surveys." *Rollins v. Davidson*, 84 Iowa, 237, and cases therein cited. The same rule is applicable to town plats. Where there is a discrepancy between the courses and distances indicated by the plat, and the survey as actually made, the latter controls. *Bradstreet v. Dunham*, 65 Iowa, 248, 250; *City of Racine v. J. I. Case Plow Co.*, 56 Wis. 539; 14 N. W. Rep. 599; *Koenigs v. Jung*, 40 N. W. Rep. (Wis.) 801. The deed of a lot by number will be held to convey the lot as it is bounded by the lines actually run by the survey, when they can be ascertained. *Ufford v. Wilkins*, 33 Iowa, 110.

A satisfactory determination of the contest in this case is reached by applying the rules indicated to the facts disclosed by the record. It is shown that possession of the lots was taken, fences were built, and improvements made, within a short time after the first survey was completed, and when the boundary lines as located by the surveyor, must have been well known to McDonald and others. McDonald pointed out the bounds of the lots to purchasers, and improvements were made according to his direction. We are satisfied that they were made and that the lots are now occupied according to the Morrison survey. The deeds under which the plaintiffs hold were of lots described by numbers, which were ascertained and located by that survey. The town controls and uses the alleys which were in fact dedicated to the public, and has no right to interfere with the lots which are now in the actual possession of the plaintiffs.

The decree of the district court is AFFIRMED.